**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MAURICE BLALOCK,

                          Plaintiff,

          v.                                                    No. 15-CV-0045
                                                                (DNH/CFH)
J.T. SMITH; et al.,

                          Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

MAURICE BLALOCK
Plaintiff Pro Se
97-A-4810
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

HON. ERIC T. SCHNEIDERMAN          NICOLE E. HAIMSON, ESQ.
Attorney General for the                     Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff Maurice Blalock ("Blalock" or "Plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to the Civil Rights Act, 42 U.S.C. §

1983, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §

---

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

2000cc-1 et. seq. ("RLUIPA").  Dkt. No. 12 ("Am. Compl.").  Blalock contends that defendants deprived him of his statutory rights to religious freedom as well as his constitutional rights under the First Amendment.  See id.  Presently before the Court is defendants' motion, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss Blalock's complaint.[2]  Dkt. No. 37.  Blalock has opposed the motion.  Dkt. No. 42. For the following reasons, it is recommended that defendants' motion to dismiss be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Blalock as the non-moving party.[3]  See subsection II(A) infra.  At the relevant time, Blalock, an orthodox Muslim, was confined at Shawangunk Correctional Facility ("Shawangunk C.F.") and Eastern Correctional Facility ("Eastern C.F.").  Am. Compl. ¶ 7, 30.

On October 16, 2013, defendant Sergeant Harrison ("Harrison") stopped Blalock and advised him that altering or wearing sweat pants above the ankle was prohibited.  Am. Compl. ¶ 37-38.  Plaintiff had previously cut his pants at the ankle in accordance with

---

[2]  Defendant Ines Fernandez has served an Answer to the Amended Complaint.  Dkt. No. 38.

[3]  Blalock's original complaint included several attached exhibits.  Dkt. No. 1 ("Compl.") (Dkt. Nos. 1-3 through 1-9).  Plaintiff's amended complaint did not include the exhibits.  Am. Compl.  "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint."  Wellington v. Langendorf, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013).  To require plaintiff to file an amended complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action."  Alexander v. United States, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D. Cal. Aug. 5, 2013).  Because plaintiff is proceeding pro se, the Court will consider the exhibits and documentation attached to the original complaint as incorporated by reference in the amended complaint. See Alvarado v. Ramineni, No. 08-CV-1126 (TJM/GHL), 2011 WL 6937477, at *5 n.9 (N.D.N.Y. Dec. 6, 2011).

Islaamic law.  Id.  On October 17, 2013, defendant Sergeant Lellek ("Lellek") advised

Blalock that inmates were prohibited from hemming their pants above the top of the ankle.

Am. Compl. ¶ 44.  Lellek directed Blalock's attention to two memorandums posted on a

board prohibiting inmates from shortening their pants above their ankles.  Id.

On October 18, 2013, October 22, 2013, and November 8, 2013, Blalock filed

grievances (SHG 28560-13, SHG 28565-13, SHG 28612-13), and claimed that he was

harassed and threatened by Harrison and other staff members regarding the length of his

pants.  Dkt. No. 1-3 at 2-5, 15-18; Dkt. No. 1-4 at 12-14.  Plaintiff accused the staff of

relying upon outdated directives and "misinformation" related to the length of his pants

including memorandums from March 2010 and April 2010.[4]  Dkt. No. 1-3 at 2-5; Am. Compl.

at ¶ 38, 39, 41, 44.  In the grievances, Blalock claimed that he was in full compliance with

the revisions to Directive 3081 entitled Inmate Clothing Issue.[5]  Id.  During the investigation

into the grievances, Lellek issued a memorandum stating that he observed Blalock with his

pants "way above his ankle."  Dkt. No. 1-3 at 21.  Lellek reported that he provided Blalock

with copies of the memorandums mandating that inmate pants reach the top of the ankle

bone and further asserted that the Blalock walked away without incident.  Id.  Lellek also

---

[4] On March 12, 2010, Captain L. Pingotti issued a memorandum to all security supervisors advising that, "[b]ased on direction from Central Office and CORC Decisions, inmates will NOT be permitted to shorten their pants above the ankles.  They will be permitted to ROLL their pants above their ankles at the time of prayer."  Dkt. No. 1-3 at 22.  On April 6, 2010, defendant Superintendent J.T. Smith ("Smith") issued a memorandum to the inmate population regarding the unauthorized hemming of pants.  Id. at 23.  Smith advised that there was no policy that authorized an inmate to permanently alter the length of state pants above the ankle bone for religious reasons.  Id.  Smith cited to CORC decisions and advised that pants could be rolled up during services or prayer and directed inmates to seek assistance to be in compliance.  Id.

[5] On January 25, 2012, Directive 3081 was revised and provided, "[u]pon request, male inmates with an Islamic religious affiliation, as recorded in Departmental records, may have their pants hemmed to reach the top of their ankle bone."  Dkt. No. 1-3 at 24.

stated that copies of said memorandum and Directive 3081 were posted in the area where the incident occurred.  Id.  Smith issued written decisions denying the aforementioned grievances.  Dkt. No. 1-3 at 7, 28; Dkt. No. 1-4 at 15.

On December 4, 2013, Lange ordered Blalock to stop wearing his pant hem above the ankle.  Am. Compl. ¶ 68.

On December 5, 2013, Blalock wrote to the facility Imaam requesting his assistance with the pant issue.  Am. Compl. ¶ 70.  On December 12, 2013, the Imaam wrote to Smith and included a copy of Blalock's December 5, 2013 letter.  Id. ¶ 71; Dkt. No. 1-4 at 22.

On January 11, 2014, Blalock filed a grievance (28762-14) complaining that he was harassed by Lellek and Lange.  Am. Compl. ¶ 86; Dkt. No. 1-5 at 25.  On January 31, 2014, Smith denied Blalock's grievance.  Am. Compl. ¶ 86; Dkt. No. 1-5 at 4.  On February 3, 2014, Blalock filed another grievance (SHG 28794-14) regarding Smith's denial of the grievance and the "improprieties surrounding its investigation on the part of . . . Lange.  Am. Compl. ¶ 88.  On February 25, 2014, Smith issued a decision denying the grievance.  Id. ¶ 89; Dkt. No. 1-5 at 11.

On February 27, 2014, Blalock was transferred to Eastern C.F. by defendant Smith "under 'Principle Keeper' status", which is used "to transfer an offender . . . deem[ed] as a problem." Am. Compl. ¶ 90.

On April 3, 2014, Blalock received a misbehavior report charging him with being out of place because he had not been given permission to go to the law library.  Am. Compl. ¶ 102.  The same day, Blalock sent a request to defendant Deputy Commissioner of Program Services Gene Niles ("Niles"), to attend Jumu'ah congregational prayer service scheduled for April 4, 2014.  Am. Compl. ¶ 101.  On April 4, 2014, Niles denied Blalock's request and

4

explained that Blalock could not attend services while his disciplinary hearing was pending. Am. Compl. ¶ 102; Dkt No. 1-6 at 3-6.

On April 8, 2014, a Tier II hearing commenced regarding the misbehavior report. Am. Compl. ¶ 105. On the same day, plaintiff submitted a request to Niles asking to attend Jumu'ah congregational prayer services scheduled for April 12, 2014. Id. ¶ 106. On April 11, 2014, Niles denied Blalock's request. Id. ¶ 113; Dkt. No. 1-6 at 14. On April 12, 2014, plaintiff wrote to defendant Superintendent Thomas Griffin ("Griffin") and requested that he "intercede" on Blalock's behalf with regard to Blalock's right to attend prayer services. Am. Compl. ¶ 113.; Dkt. No. 1-6 at 10-13. On April 14, 2014, Blalock filed a grievance (ECF 25917-14) against defendant Niles for denying him the right to attend prayer services. Am. Compl. ¶ 115; Dkt. No. 1-6 at 3-6.

On April 16, 2014, Blalock was found guilty and sentenced to "time served with regard to keeplock and 14 days loss of recreation." Am. Compl. ¶ 121; Dkt. No. 1-5 at 20. On April 21, 2014, Niles affirmed the guilty determination and sentence. Id. ¶ 122, 125; Dkt. No. 1-5 at 22. On April 27, 2014, Blalock filed a grievance (ECF 25931-14) against defendant Niles for affirming the appeal of plaintiff's Tier II hearing, claiming that defendant Niles retaliated against him because he had previously filed a grievance against Niles. Am. Compl. ¶ 126; Dkt. No. 1-7 at 2-3. Griffin issued a decision denying Blalock's grievance against Niles related to religious services. Dkt. No. 1-7 at 8.

On April 28, 2014, Blalock wrote a letter to defendant Deputy Commissioner of Program Services, Jeff McKoy ("McKoy") with complaints regarding the grievance process at Eastern C.F. Dkt. No. 1-7 at 4-5. On April 29, 2014, Blalock filed a grievance (ECF 25932-14) claiming he was the victim of retaliation. Dkt. No. 1-7 at 10. Griffin issued a decision

denying the grievance. Dkt. No. 1-7 at 14. On May 27, 2014, Blalock wrote McKoy regarding Niles. Dkt. No. 1-6 at 20.

On June 4, 2014, Blalock was stopped by defendant Douglas M. Padgett ("Padgett") and asked about his raised pant hem. Defendant Sgt. Paul T. Menard ("Menard") stood by "looking oddly suspicious." Am. Compl. ¶ 139. Padgett told Blalock that his pants were too high. Id. ¶ 140. On June 5, 2014, Blalock filed a grievance (ECF 25964-14) entitled "Denial of Right to Wear Religious Pant Hem" and requested that staff be advised of the Muslim dress code. Dkt. No. 1-8 at 10. On June 6, 2014, Blalock wrote to Griffin and complained that staff at Eastern C.F. were harassing him about the length of his pants in retaliation for his grievances. Am. Compl. ¶ 142; Dkt. No. 1-8 at 5-8. On June 10, 2014, Blalock filed a grievance (ECF 25959-14) complaining about the grievance process. Dkt. No. 1-7 at 17-19. Griffin issued decisions denying Blalock's grievances. Dkt. No. 1-7 at 24; Dkt. No. 1-8 at 10.

On June 17, 2014, defendant B. Leifeld ("Leifeld") locked Blalock in his cell without explanation and forced him to surrender all of his state issued pants. Am. Compl. ¶ 148. Defendant Daniel R. Parkhurst ("Parkhurst") gave plaintiff two pair of replacement pants that were too small. Id. ¶ 151. Blalock asked defendant Parkhurst for larger pants, explaining that the tight pants violated his religious beliefs because "Islaam emphasized modest dress as an essential aspect of correct faith" and he needed more "room in his pants to perform the bowing and prostrating during prayer," but Parkhurst "ignored his plea." Am. Compl. ¶ 151. On June 19, 2014, Blalock received a misbehavior report charging him with altering state property. Dkt. No. 1-9 at 2. Leifeld reported that Blalock's clothing was inspected for compliance with Directive 3081 and found to be altered at the

6

waistband. Dkt. No. 1-9 at 2.

On August 3, 2014, defendant Santiago Cruz ("Cruz") searched Blalock's cell and confiscated seventeen Islaamic religious texts.  Am. Compl. ¶ 171.  On August 6, 2014, Cruz asked Blalock to sign a form to authorize how he wished to dispose of the confiscated texts.  Id. ¶ 175.  On August 7, 2014, Blalock received a copy of an authorization disposing of the texts.  Am. Compl. ¶ 178.  On August 10, 2014, Blalock submitted a property claim for the destroyed religious texts.  Id. ¶ 179.  On August 25, 2014, Blalock's claim was denied and on September 9, 2014, Griffin denied the appeal of his property claim.  Id. ¶ 181; Dkt. No. 1-9 at 17-18.  Blalock filed a grievance (ECF 26051-14) against Cruz and on September 29, 2014, Griffin denied the grievance.  Dkt. No. 1-9 at 20.

Construing the claims liberally, Blalock alleges that: (1) Harrison, Lellek, Leifeld, Lange, Menard, Padgett, Parkhurst, and Niles violated his First Amendment rights and rights under RLUIPA; (2) Niles, Cruz, Leifeld, and Smith retaliated against him in violation of his First Amendment rights;[6] and (3) supervisory claims against McKoy, Smith and Griffin.[7]  See Am. Compl., generally.

## II. Discussion[8]

Defendants move to dismiss the amended complaint arguing that: (1) Blalock's First

---

[6] While Blalock asserted a retaliation claim against Fernandez, that claim is not relevant to the issues presented on the within motion.

[7] In Blalock's opposition to defendants' motion, he seeks to amend his complaint to assert a supervisory claim against Niles.  See Dkt. No. 42.  That request is discussed infra.

[8] All unpublished opinions cited to by the Court in this Report–Recommendation and Order are, unless otherwise noted, attached to this Report–Recommendation and Order.

Amendment and RLUIPA claims against Niles fail to state a claim; (2) Harrison, Lellek, Leifeld, Menard, Padgett, Parkhurst, and Lange are entitled to qualified immunity with respect to Blalock's First Amendment and RLUIPA claims; (3) Blalock's retaliation claims against Cruz and Smith fail to state a claim[9]; and (4) Blalock has failed to sufficiently plead personal involvement of the supervisory defendants; Smith, McKoy, and Griffin.[10] See Dkt. No. 37-1, generally.

## A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

---

[9] Defendants do not seek dismissal of Blalock's retaliation claims against Niles and Leifeld.

[10] Defendants also moved to dismiss Blalock's request for injunctive relief from Shawangunk C.F. as moot. See Dkt. No. 37-1 at 6. Blalock voluntarily withdrew that claim. See Dkt. No. 42 at 6.

evidence of illegal [conduct] .")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

## B.  First Amendment and RLUIPA Claims

Blalock claims that Niles violated his religious rights when he prevented him from attending congregational prayer.  Am. Compl. ¶¶ 101-02, 106, 113.  Blalock also alleges that Harrison, Lellek, Leifeld, Lange, Menard, Padgett, and Parkhurst prevented him from wearing his pants in the manner required by his Muslim religious beliefs.  <u>See</u> Am. Compl. ¶¶37-38, 44, 68, 139, 148, 151.  Defendants argue that Blalock's religious claims against Niles are subject to dismissal because precluding plaintiff from attending two religious services did not amount to a substantial burden on his religious beliefs.  Dkt. No. 37-1 at 7.  Defendants also contend that Blalock's religious claims related to the length and size of his pants against Harrison, Lellek, Leifeld, Menard, Padgett, Parkhurst and Lange are subject to dismissal based upon qualified immunity.  Dkt. No. 37-1 at 8.

The First Amendment to the United States Constitution guarantees the right to free exercise of religion.  U.S. Const. amend. I; <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 719 (2005).  The Free Exercise Clause applies to prison inmates, subject to appropriate limiting factors.  <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974)).  This right is not absolute and can be limited due to the inmate's "incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (citations omitted); <u>see</u> <u>also</u> <u>Benjamin v. Coughlin</u>, 905 F.2d 571, 574 (2d Cir.1990) ("The governing standard is one of reasonableness, taking into account whether the particular regulation . . . is reasonably related to legitimate penological interests.") (citations omitted).

10

> The *Turner* Court determined that the four factors to be considered are considered: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

Benjamin, 905 F.2d at 574 (citing Turner v. Safley, 483 U.S. 78, 89–91 (1987)).

The principles which guide the analysis of a free exercise claim are similar to those applicable to an RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks. See Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006).

RLUIPA provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

In a RLUIPA claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." Salahuddin, 467 F.3d at 274-75.

> Congress, in enacting RLUIPA, anticipated that Courts would give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Nevertheless, prison officials cannot simply use the words

> "security" and "safety," and expect that their conduct will be permissible.

Singh v. Goord, 520 F. Supp. 2d 487, 499 (S.D.N.Y. 2007) (internal citations omitted).  As an initial matter, Blalock is barred from obtaining monetary damages from defendants in their individual or official capacities under the RLUIPA claim. Pugh v. Goord, 571 F. Supp. 2d 477, 506–09 (S.D.N.Y.2008).

### 1.  Niles

"[P]risoners have a constitutional right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir.1993) (citations omitted).  While the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, . . . prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible."  Young v. Coughlin, 866 F.2d 567, 570 (2d Cir.1989) (citations omitted). "The governing standard is one of reasonableness, taking into account whether the particular regulation affecting some constitutional right asserted by a prisoner is reasonably related to legitimate penological interests." Benjamin, 905 F.2d at 574 (citations omitted).  The same analysis is undertaken when there is an allegation that "an individual dec[ided] to deny a prisoner the ability to engage in some requested religious practice." Ford, 352 F.3d at 595 n. 15 (citations omitted).

In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a "substantial burden" on a plaintiff's free exercise of religion. Lopez v. Cipolini, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) (citing Jean-Laurent v. Los,

No. 12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 8, 2015)) (explaining that "[c]ourts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion"); Smith v. Graziano, No. 9:08-CV-469 GLS/RFT, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010), report and recommendation adopted, 2010 WL 1332503 (N.D.N.Y. Apr. 6, 2010) (finding that the cancellation of the religious services did not prevent the plaintiff from practicing his religion in other ways and, further, the events were isolated occurrences, and not a systematic problem or policy of denying religious services).

Here, Blalock has not alleged facts suggesting that Niles' refusal to allow him to attend two congregate prayer services created a substantial burden on his religion or that he was prevented, in other ways, from practicing his religion.  See Blalock v. Jacobsen, No. 13-CV-8332, 2014 WL 5324326, at *7 (S.D.N.Y. Oct. 2, 2014) ("Courts in this Circuit, however, have held that the conduct Blalock challenges—the denial of two religious services—does not substantially burden an inmate's right to religious observation") (collecting cases) Accordingly, the undersigned recommends that defendants' motion to dismiss be granted on this ground.

## 2.  Harrison, Lellek, Leifeld, Menard, Padgett, Parkhurst, and Lange

Defendants argue that even assuming Blalock could establish a constitutional violation related to the length of his pants, it was reasonable for officers in defendants' positions to believe that their conduct was not unlawful.  Dkt. No. 37-1 at 11.

Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

13

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (J. McAvoy), aff'd, 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citation omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194 (2001). Only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry must be discussed with regard to Blalock's First Amendment right to religious free exercise claims. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("[J]udges . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Courts in this circuit have addressed the issue at hand with conflicting opinions. Compare Williams v. Leonard, No. 11-CV-1158 (TJM/TWD), 2013 WL 5466191, at *2-4 (N.D.N.Y. Sept. 30, 2013), with Blalock, 2014 WL 5324326, at *8. In Blalock v. Jacobsen, Blalock made similar claims against the staff at Green Haven Correctional Facility related to his pant length. Blalock, 2014 WL 5324326, at *7. In that case, Blalock alleged that on two occasions in February 2012, one month after DOCCS issued an amendment to Directive 3081, the defendant Jeffrey Erns ("Erns") forced him to change into unaltered pants. Id. at

14

*1. Blalock claimed that the defendant ordered him to change once before the defendant had seen the amendment to 3081 and again, "a few weeks after he had read the amendment in Blalock's presence. " Id. Erns moved to dismiss the claims based upon qualified immunity. Id. The Court stated, "neither the Supreme Court nor the Second Circuit has held that a prisoner has the right to wear pants at any particular length. Blalock, 2014 WL 5324236, at *8. The Court also reasoned, based upon the facts presented, that a reasonable person in the defendant's position would not have understood his actions to be violating the law because he acted in accordance with official DOCCS policy (Directive 3081). Id. The Court granted the defendant's motion for qualified immunity holding that, "Blalock himself admits that the amended Directive was difficult to enforce correctly because his pant hem appeared to be correct when standing still but too short when walking or sitting." Id. The Court concluded, "in light of those circumstances, a reasonable officer in Erns' position would not have understood that what he was doing was against the law." Id.

Conversely, in a case in this district, Williams, 2013 WL 5466191, at *2-4, the Court declined to dismiss the plaintiff's First Amendment religious claims related to the length of his pants on the basis of qualified immunity. The Court reasoned:

> . . . the facts alleged in the Complaint are unclear as to when Defendants were advised that the practice of at-ankle-length pants outside of religious observations and above-ankle-length pants during religious observations was in keeping with Plaintiff's religious beliefs. Moreover, the allegations in the Complaint indicate that before Defendants were purportedly advised of the propriety of the at-ankle-length/above-ankle length protocol, they were advised by an iman that Muslims who practiced Islam should be allowed to wear their pants above the ankle at all times. Thus, due to the conflicting factual issues regarding the propriety of different pant lengths for Muslim inmates, qualified immunity

cannot be granted on this issue at this time.

Williams, 2013 WL 5466191, at *3 (internal citations omitted).

Addressing the issue of whether the right was clearly established, the Court, quoting

Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010), reasoned:

> while *Redd* requires the constitutional issue be framed with "reasonable specificity," the right must not be framed too narrowly. Describing the right at issue overbroadly eviscerates the protections of qualified immunity; describing it too narrowly negates the possibility of redress."

Williams, 2013 WL 5466191, at *3.

Finding that while "prison officials may not substantially burden inmates' right to religious exercise without some justification," the Court also concluded that the facts, "when viewed in a light most favorable to the plaintiff, established a constitutional violation with respect to the pant-length issue and that [d]efendants . . . have not identified [at this stage of the litigation] any legitimate penological reason for their refusal to allow the plaintiff to wear his pants at the length mandated by his religion." Williams, 2013 WL 5466191, at *4 (citing Salahuddin, 467 F.3d 275-76). Thus, the Court held:

> Absent a legitimate penological interest for the below-ankles requirement (which, on this Rule 12(b) (6) motion, the Court must assume did not exist), Defendants could have reasonably anticipated before that their refusals to allow Plaintiff to wear his pants above his ankles at all times substantially burdened his right to religious exercise without justification. Thus, in light of pre-existing law, the unlawfulness of the conduct would be apparent. This is so even though there are no cases from the Second Circuit or Supreme Court that specifically address whether a Muslim inmate may wear his pants at a particular length. Accordingly, qualified immunity on this claim must be denied at this

16

time.[11]

<u>Williams</u>, 2013 WL 5466191, at *4 (internal citations omitted).

Here, based upon the facts presented at this stage of the litigation, the Court is persuaded by the analysis and reasoning set forth in <u>Williams</u>.  Blalock claims that defendants were aware, or should have been aware, that their actions violated his constitutionally-protected rights.  Blalock contends that defendants relied upon outdated CORC decisions, memorandums, and directives rather than the amendment to Directive 3081 that had been in effect for nearly a year and a half.  Blalock also claims that he provided copies of the amended Directive to defendants and that the facility Imaan was advising defendants.  Conversely, defendants claim that they were aware of the amendment to Directive 3081 and relied upon "Directive 3081 and CORC decisions" in the "legitimate penological interests of facility safety."  Dkt. No. 37-1 at 10-11.  However, defendants have not identified any such legitimate penological interest.  At this stage of the litigation, it is unclear whether reasonable officers in defendants' positions would have believed that their conduct was not unlawful in the situations presented.  Thus, dismissal based upon qualified immunity is not appropriate at this time.  Consequently, the undersigned recommends that defendants' motion for dismissal of Blalock's First Amendment freedom of religion claims against Harrison, Lellek, Leifeld, Menard, Padgett, Parkhurst and Lange based upon qualified immunity be denied.

With respect to the RLUIPA claims, Blalock was transferred from Shawangunk C.F. to

---

[11] The Court explained that the ruling was based upon the existing factual dispute and thus, did not preclude the defendants from moving to dismiss based upon qualified immunity at some time later in the litigation.  <u>Williams</u>, 2013 WL 5466191 at *4.

Eastern C.F.  Thus, any claim for injunctive relief against the Shawangunk defendants, Harrison and Lange, is moot.  See Brandon v. Schroyer, No. 9:13-CV-0939 (TJM/DEP), 2016 WL 1638242, at *9 (N.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, 2016 WL 1639904 (N.D.N.Y. Apr. 25, 2016) (citing Shepherd v. Goord, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); Blalock, 2014 WL 5324326, at *3 ("As all of the Moving Defendants are employed at Green Haven, and Blalock is presently incarcerated at Eastern Correctional Facility, any claims for injunctive relief against the Moving Defendants are moot.").

Accordingly, it is recommended that Blalock's RLUIPA claims against Harrison and Lange be dismissed.

### C.  First Amendment - Retaliation

Plaintiff asserts a retaliation claim against Cruz for confiscating and destroying his religious texts.  Blalock also claims that his transfer from Shawangunk C.F. to Eastern C.F. was retaliatory in nature.  Defendants contend that Blalock has failed to state a cause of action for retaliation against Cruz and Smith.  Dkt. No. 37-1 at 13-14.

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010).  The Second Circuit has stated that

courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  Dawes v. Walker, 239 F.3d 489 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988).

As to the first element of the retaliation claim, it is well settled that the filing of grievances constitutes protected activity for purposes of a First Amendment retaliation claim analysis.  See Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right.").  In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action.  Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).  While there is no "bright line" defining the limits of the temporal relationship, courts in this Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory.  See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001); see also Ashok v. Barnhart, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) (reasoning that the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several

months).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214–15 (N.D.N.Y. 2008). To that end, there is a "presumption that a prison official's acts to maintain order are done for a proper purpose." Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.1998). The Second Circuit has explained that "the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." Id. If a plaintiff satisfactorily alleges that an improper motive played a substantial part in the defendant's action, the defendant must show that it would have taken "exactly the same action absent the improper motive." Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

### 1. Cruz

Defendants argue that Blalock's retaliation claim against Cruz is subject to dismissal for failure to plead that he engaged in protected conduct that was causally connected to the alleged adverse action taken by Cruz. Dkt. No. 37-1 at 13. Plaintiff did not respond to this argument.

Blalock filed a grievance against Cruz related to his books on August 21, 2014, *after* the alleged retaliatory cell search. Dkt. No. 1-9 at 20. The cell search took place on August 3, 2014. Am. Compl. ¶ 171. Blalock claims that he filed approximately seven grievances prior to the cell search but the grievances do not name Cruz specifically. "[A] Complaint will

withstand a motion to dismiss if the Plaintiff alleges 'a chronology of events from which retaliation may plausibly be inferred.'" Soto v. Iacavino, No. 01 Civ. 5850(JSM), 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (citations omitted).  Here, Blalock's allegations fail to state any causal connection between the grievances he filed against other officers and Cruz's cell search.  Thus, Blalock has failed to state a retaliation claim against Cruz.  See Jean-Laurent v. Lane, No. 9:11-CV-186 (NAM/TWD), 2013 WL 600213, at *11 (N.D.N.Y. Jan. 24, 2013) (dismissing retaliation claim where the plaintiff failed to show that prison official knew of a complaint he filed against the facility's Chief Medical Officer).

Therefore, the undersigned  recommends that the court grant this portion of defendants' motion and dismiss plaintiff's retaliation claim against Cruz.


## 2.  Smith

Defendants do not dispute that Blalock engaged in protected activity that Smith was aware of and do not contend that the transfer to Eastern C.F. was not an adverse action. Rather, Defendants argue that Blalock has not sufficiently plead a retaliation claim against Smith because Blalock did not file a grievance or complaint about Smith prior to the alleged retaliatory transfer.  Dkt. No. 37-1 at 14.  Defendants' argument lacks merit.

To establish that a transfer is retaliatory in nature, the plaintiff must demonstrate that he engaged in constitutionally protected conduct that was a substantial or motivating factor in the defendant's decision to transfer.  See Salahuddin v. Perez, No. 99 CIV. 10431, 2006 WL 266574, at *5 (S.D.N.Y. Feb. 2, 2006) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Viewing the facts in a light most favorable to Blalock, while confined at Shawangunk C.F., Blalock filed approximately four grievances against

staff for harassment and threats related to the length of his pants.  See Dkt. No. 1-3 at 2-5, 15-18; Dkt. No. 1-4 at 12-14, 25.  Plaintiff also filed a grievance complaining about the grievance procedures and process.  DKt. No. 1-5 at 11.  Smith issued decisions denying the aforementioned grievances.  Dkt. No. 1-3 at 7, 28; Dkt. No. 1-4 at 15; Dkt. No. 1-5 at 4, 11. At this juncture, Blalock has sufficiently alleged that Smith was aware of the grievances. Blalock alleges that the filing of the grievances was a substantial or motivating factor in Smith's decision to transfer him to Eastern C.F., because he was transferred two days after Smith denied his grievance related to the grievance process.  Dkt. No. 12 ¶ 90.  At this juncture, Blalock has sufficiently alleged a retaliation claim against Smith.  See Waul v. Coughlin, No. 93 Civ. 753, 1995 WL 258165, at *3 (S.D.N.Y. May 2, 1995) (holding that the plaintiff set forth sufficient facts suggesting that the filing of grievances was a substantial or motivating factor in his transfer).  Accordingly, the undersigned recommends that defendants' motion on this ground be denied.

### D.  Supervisory Liability

Defendants move to dismiss Blalock's supervisory claims against Smith, McKoy, and Griffin.  Dkt. No. 37-1 at 14.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

(1)  [T]he  defendant  participated  directly  in  the  alleged

22

constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).[12]

## 1. Smith and Griffin

Plaintiff claims that Smith was apprised of the constitutional violations at Shawangunk through Blalock's grievances and by the facility Imaam.  Am. Compl. ¶ 205.  "While mere receipt of a letter from a prisoner is insufficient to establish individual liability, an official's actions and responses arising out of a grievance may."  Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citing Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (finding personal involvement where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint)).

---

[12] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Here, Blalock claims that Smith denied five grievances related to harassment, threats

and retaliation while he was confined at Shawangunk C.F. and annexed copies of Smith's

responses to those grievances.  See Dkt. No. 1-3 at 7, 28; Dkt. No. 1-4 at 15, Dkt. No. 1-5

at 4, 11.  Blalock contends that Griffin "ignored the improprieties [. . .] after Plaintiff

repeatedly brought it to his attention" through correspondence, written reports and

grievance appeals.  Am. Compl. ¶ 212.  Plaintiff identified approximately seven grievances

that he filed against staff at Eastern C.F. and annexed copies of Griffin's denials of those

grievances.  See Dkt. No. 1-7 at 8, 14, 22; Dkt. No. 1-8 at 10; Dkt. No. 1-9 at 7, 20.  A

prison's superintendent cannot be found personally involved based solely on his denial of a

grievance.  If such a finding established the personal involvement of a superintendent, then

every superintendent at each DOCCS facility could be deemed personally involved in any

constitutional violation pursued by an inmate through the grievance process, since all

grievances must be appealed to the superintendent of the facility to comply with the Prison

Litigation Reform Act.  See Madison v. Mazzuca, No. 02-CV-10299 (RWS), 2004 WL

3037730, at *10 (S.D.N.Y. Dec. 30, 2004) (granting motion to dismiss as to prison officials

where the plaintiff filed and subsequently appealed grievances to the facility's

superintendent).

Additionally, Blalock's claims that Smith was apprised of the constitutional violations

through a letter written by Shawangunk's Imaam and  that he wrote to Griffin while

incarcerated at Eastern C.F. are insufficient to establish either superintendent's personal

involvement.  Dkt. No. 1-6 at 10-13, 16; Dkt. No. 1-7 at 22; Dkt. No. 1-8 at 5-8.  The Second

Circuit has held that, at the initial pleading stage, an inmate's complaint may survive a

motion to dismiss based on a defendant's lack of personal involvement if the inmate's

complaint "contain[s] factual allegations indicating that [a l]etter was sent to [an official] at an appropriate address and by appropriate means—that the [official] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions by which [the inmate] complained." Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013); see also Acevedo v. Fisher, No. 12–cv–6866 (RA), 2014 WL 5015470, at *16 (S.D.N.Y. Sept. 29, 2014) (finding that the receipt of letters is insufficient to establish personal involvement). Here, Blalock's complaint fails to plead sufficient facts showing that Smith or Griffin actually received the letters sent from them, as he has alleged no facts indicating that Smith or Griffin received or responded to the letters.

Accordingly, it is recommended that defendants' motion on this ground be granted as to defendants Smith and Griffin.

### 2. McKoy

Plaintiff alleges that he "consistently apprised Commissioner McKoy" of the incidents at Shawangunk C.F. and Eastern C.F. and that McKoy refused to remedy the alleged constitutional violations. Am. Compl. ¶ 204. On April 28, 2014, Blalock wrote to McKoy at 1220 Washington Avenue in Albany, New York. Dkt. No. 1-7 at 4. On May 27, 2014, Blalock wrote a second letter to McKoy but fails to allege any facts establishing where he forwarded the correspondence or by what means it was sent.[13] See Dkt. No. 1-6 at 20.

Here, under Grullon, Blalock has failed to allege facts showing that McKoy received the letters, or responded to them, and thereby became aware of the alleged constitutional

---

[13] The letters were annexed as exhibits to the complaint.

violations.  See Grullon, 720 F.3d at 140.  Accordingly, it is recommended that defendants'
motion on this ground be granted.

### 3. Niles

In opposition to defendants' motion, Blalock contends that he intended to assert a
supervisory claim against Niles but that he "believes it was missed by the Court due to a
[sic] unintentional oversight."[14]  Dkt. No. 42 at 6, n. 1.  Blalock's supervisory claims against
Niles arise out of Blalock's April 2014 disciplinary hearing.  Blalock alleges that Niles was
personally involved in the alleged due process violations that occurred at the hearing and
failed to remedy those violations when he affirmed the hearing officers' determination and
sentence.  Dkt. No. 42 at 6-7.

Even assuming Blalock properly plead a supervisory claim against Niles, the claim is
subject to dismissal.  In the May Order, the Court dismissed Blalock's Fourteenth
Amendment due process claims arising out of his April 2014 hearing.  Dkt. No. 9 at 24.
Therefore, the undersigned recommends that the court dismiss Blalock's supervisory claims
asserted against Niles arising from that hearing.  See, e.g., Lopez v. Whitmore, No.
13–CV–0952 (BKS/ATB), 2015 WL 4394604, at *11 (July 16, 2015) (dismissing due
process claim against supervisory defendant "[b]ecause his only involvement in plaintiff's
claims was to affirm the results of a disciplinary hearing that th[e] court . . . found comported
with due process").

---

[14] Defendants did not object or otherwise respond to this request.

### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**ORDERED**, that the Clerk of the Court amend the docket to include supporting exhibits (Dkt. Nos. 1-3 through 1-9) with the amended complaint (Dkt. No. 12); and it is further

**RECOMMENDED**, that defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 37) be **GRANTED** as to plaintiff's:

   a.  claims for injunctive relief against Shawangunk C.F.;

   b.  claims for monetary damages from defendants in their individual or official capacities under the RLUIPA claim;

   c.  First Amendment and RLUIPA claims against Niles;

   d.  RLUIPA claims against Harrison and Lange;

   e.  First Amendment retaliation claim against Cruz; and

   f.  Supervisory claims against Smith, McKoy, Griffin and Niles; and it is further

**RECOMMENDED**, that defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 37-1) be **DENIED** as to plaintiff's:

   a.  First Amendment religious claims against Harrison, Lellek, Leifeld, Menard, Padgett, Parkhurst, and Lange;

   b.  RLUIPA claims against Lellek, Leifeld, Menard, Padgett, and Parkhurst; and

   c.  First Amendment Retaliation claim against Smith; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have ten days

27

within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


Dated:        August 24, 2016
              Albany, New York


Christian F. Hummel
U.S. Magistrate Judge